873 F.2d 1438
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John CORDER; Dana Orndorff; Robert C. Fisher; David
Lucas; Earnest Coalter, Jr.; John Toney; Thomas Johnson;
Earl Slawter; A.K. Bryant; B.R. Ashley; Wesley Haynes;
C.E. Winter; Edwin Starkey; K.R. Joyce; George Ball; Guy
Bailey; James Lamb; Cleo Pfost; Jack Shuck; Charles
Harless; Glendon Henson; Don Knight; James Williams;
Jimmie Saunders, Plaintiffs-Appellants,
v.
TEAMSTERS LOCAL UNION NO. 175, AFFILIATE OF INTERNATIONAL
BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMAN, AND HELPERS OF AMERICA;
Chemical Leaman Tank Lines,
Inc., Defendants-Appellees.
 No. 88-2515.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 6, 1988.
Decided: April 5, 1989.
 
 Jerry Michael Ranson (Guy R. Bucci, Deborah L. McHenry, Bucci & Ranson, on brief), for appellants.
 James Francis Wallington (Robin Jean Davis, Hostler and Segal, on brief); Robert John Bray, Jr., (Regina C. Reardon, Robert J. Bray & Associates; Daniel R. Schuda, Steptoe & Johnson; Gary S. Witlen, on brief), for appellees.
 Before Ervin, Chief Judge, and Harrison L. Winter, Circuit Judge, and Haynsworth, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This is a hybrid action under Section 301 of the Labor-Management Relations Act, 29 U.S.C.A. Sec. 185 ["Sec. 301"]. John Corder and others (collectively "Plaintiffs"), all former employees of Coastal Tank Lines, Inc. ("Coastal") and all members of Local Affiliate No. 175 ("Local 175") of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America Local 175 ("the Teamsters"), sued their current employer, Chemical Leaman Tank Lines, Inc. ("Chemical"), the Teamsters, and Local 175. Plaintiffs alleged that Local 175 did not fairly represent them in seniority proceedings before an arbitration panel.[1] Plaintiffs also alleged that Chemical's conduct before the arbitration panel had violated EATHA.
 
 
 2
 Plaintiffs moved for summary judgment on their allegations. Local 175 and Chemical also moved for summary judgment, Local 175 arguing that it had fairly represented the plaintiffs and Chemical that there was no other basis on which to overturn the arbitrator's decision. The district court denied the plaintiffs' and granted the defendants' motions. We affirm.
 
 
 3
 On May 30, 1986, Chemical and Coastal executed a Memorandum of Agreement under which Chemical would lease and insure Coastal's equipment, consisting primarily of trucks and trailers. Coastal had been due to cease business at the end of May. The memorandum also stated that Chemical would ultimately purchase Coastal's motor vehicle equipment, and that Coastal would file for bankruptcy on June 2, 1986. The provisions of the memorandum were subject to the execution of a final agreement.
 
 
 4
 Coastal's truck drivers received word that Coastal would not shut down, as they had earlier heard, but that Coastal would become a leased operator for Chemical. Coastal filed for bankruptcy on June 3, 1986. Coastal and Chemical executed a purchase agreement for Coastal's equipment and operating authority on June 9, 1986.[2] The bankruptcy court approved the sale on July 19, 1986. The sale became final on August 1, 1986, on which date the parties cancelled the lease.
 
 
 5
 The plaintiffs dispute the way in which Chemical integrated former Coastal employees into its workforce. Chemical "endtailed", or placed at the end of its seniority list, the Coastal employees. Plaintiffs believe the EATHA required Chemical to "dovetail" Coastal employees. Dovetailing would have allowed former Coastal employees to retain their seniority (hire) dates and therefore be interspersed among Chemical's existing employees on Chemical's seniority list.
 
 
 6
 Local 175 brought plaintiffs' grievance before the JAC on August 8, 1988. The JAC concluded that Coastal had become a leased operator to Chemical on June 2, 1986, and that Chemical had not subsequently purchased Coastal as an entity, but had rather acquired some of Coastal's equipment and operating authority. The JAC therefore concluded that Sec. 26.4 of the EATHA applied to give Coastal employees preference in Chemical's hiring and to allow Chemical to endtail any Coastal employees it hired.[3]
 
 
 7
 While plaintiffs have parsed the issues more finely, their basic position is not that the district court misapprehended the law under Sec. 301, but that genuine issues of fact remain. Specifically, plaintiffs believe the JAC improperly based its decision on a "secret side agreement" divulged to it by a Chemical officer.[4] Plaintiffs also believe the same officer misrepresented the implications under the EATHA of the rights and permits Chemical acquired from Coastal. Plaintiffs last allege that the JAC's decision did not take account of all the relevant facts because the JAC did not have before it a copy of the May 30, 1986, Memorandum of Agreement.[5]
 
 
 8
 We see no reason to gainsay the district court's opinion. The evidence suggests that the JAC's opinion was at most ambiguous and Local 175 at worst negligent in handling plaintiffs' grievance. These are not legally sufficient bases successfully to attack the JAC's decision. We therefore affirm on the reasoning of the district court. Corder v. Teamsters Local Union No. 175, C/A No. 2:87-0054 (S.D.W.Va., April 5, 1988).
 
 
 9
 AFFIRMED.
 
 
 
 [1]
 The panel was the Joint Arbitration Committee ("JAC") convened under the Eastern Area Tank Haul Agreement ("EATHA"), the collective bargaining instrument to which Coastal, Chemical and Local 175 were parties
 
 
 [2]
 The district court reached no conclusion on why Chemical and Coastal elected first to arrange a lease rather than a purchase. Chemical's explanation is that it could not purchase on May 30 because Coastal's banks were demanding a bankruptcy proceeding. A purchase would have required bankruptcy court approval, says Chemical, while the lease allowed Chemical to continue to serve Coastal's customers pending approval of the sale. Chemical also wanted time to inspect Coastal's equipment before deciding whether to conclude the purchase
 
 
 [3]
 Section 26.4 provides that:
 In the event [Chemical] cancels the lease of any leased operator, it shall give preference to the drivers of such leased operator in the event [it] decides to utilize its own equipment for tank hauling. Such drivers shall go to the bottom of the Company's seniority list, but shall retain all seniority accumulated during their assignment at such terminal for purposes of fringe benefits.
 Section 5.5(a)(1) of the EATHA requires dovetailing of employees involved in the merger of terminals or operations. The JAC's role was accordingly to determine whether the Coastal-Chemical transaction was a lease or a merger.
 Section 5.9(a) of the EATHA recites:
 The parties acknowledge that the above rules are intended solely as general standards for matters concerning seniority, layoff and recall, mergers and acquisitions, openings and closings of branches and moving expenses, and further, that many factual situations are presented to the Committee which necessitate modification or amendment.
 Accordingly, the Employers and Unions acknowledge that questions of accrual, interpretation or application of seniority rights may arise which are not covered by the general rules set forth. Accordingly, it is understood that the Employer(s) and the Union(s) jointly involved, and/or the Grievance Committee may mutually agree to such disposition of questions of seniority which in their judgment is appropriate under the circumstances. (Emphasis added).
 
 
 [4]
 The JAC's minutes note that Gerald LeClaire, a vice president of Chemical, had referred to a proposal the employers made during the negotiations that produced the EATHA. The proposal, which did not carry, would have made clear that dovetail rights did not apply to a transaction such as that between Coastal and Chemical. This proposal is what plaintiffs describe as a "secret side agreement."
 Attention to the secret agreement, plaintiffs argue, caused the JAC to exceed its authority by relying on considerations outside the EATHA. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597-98 (1960) (also stating that "a mere ambiguity in the [arbitrator's] opinion ... permit[ting] the inference that the arbitrator may have exceeded his authority ... is not a reason for refusing to enforce the award.").
 
 
 [5]
 Plaintiffs believe the JAC's failure to revise the Memorandum of Agreement reflects Local 175's breach of its duty of fair representation. Vaca v. Sipes, 386 U.S. 171 (1967). Plaintiffs specifically allege that William Hopkins, Local 175's business representative and a former Coastal employee, did not properly investigate their claims or provide them adequate counsel and representation